**SO ORDERED.**

**SIGNED this 27 day of May, 2011.**

_____
**Randy D. Doub
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
NEW BERN DIVISION

IN RE:

          **CHAPTER 7**

**MARY COX STOX,**          **CASE NO. 10-08123-8-RDD**

    **DEBTOR**

**ORDER OVERRULING IN PART AND SUSTAINING IN PART
OBJECTION TO DEBTOR'S CLAIM OF EXEMPTIONS**

Pending before the Court is the Objection to Debtor's Claim of Exemptions filed by the Chapter 7 Trustee on December 6, 2010 (the "Objection") and the Response to Trustee's Objection to Debtor's Claim of Exemptions filed by Mary Cox Stox (the "Debtor") on December 22, 2010, (the "Response"). The Court conducted a hearing on May 3, 2011 in New Bern, North Carolina to consider the Objection and the Response.

The Debtor filed a petition for relief pursuant to Chapter 7 of the Bankruptcy Code on October 5, 2010. The Debtor claims exemptions pursuant to N.C. Gen. Stat. § 1C-1601(a)(1)-(a)(4). In Schedules A and C, the Debtor lists 6.851 acres of land containing a 1975 double-wide mobile home and a 1982 single-wide mobile home with a tax value of $134,200.00.[1] The Trustee objects

---

[1] The Schedules state the property was revalued in the past year resulting in the tax value doubling. The Schedules explain that the property is not worth more than $67,000.00 and the

to the Debtor's claim of property used as a residence exemption and argues that the 6.851 acre lot is in fact three parcels consisting of a 4.470 acre tract, a 1.451 acre tract and a .930 acre tract. The Debtor's residence is located on the 1.451 acre tract. The Debtor claims an exemption of $60,000.00 pursuant to N.C. Gen. Statute 1C-1601(a)(1). The Trustee objects to the Debtor's residential claim of exemption in the 4.470 acre and .930 acre tracts. The Trustee does not object to the residential exemption in the 1.451 acre tract.

Additionally, the Trustee objects to the Debtor's claim of a full wildcard exemption pursuant to N.C. Gen. Stat. § 1C-1601(a)(2) where no unused exemption amount under N.C. Gen. Stat. § 1C-1601(a)(1) exists.[2]

Debtor's Schedules A and D list a condominium located in Pitt County, with a value of $55,000.00, subject to a deed of trust in favor of Marsh Associates in the amount of $41,000.00. The Debtor explained that prior to filing bankruptcy, her husband passed away when he suffered a stroke in January of 2010. She testified that approximately fifteen months prior to her husband passing, they purchased the condominium in Greenville, North Carolina to be closer to his health care providers. The 6.851 acre tract is located in rural Craven County making it more difficult for her husband to commute to his health care providers. After her husband passed away, she was no longer able to afford the mortgage payments on the condominium. As a result, she filed for bankruptcy. At the hearing, the Debtor represented that she had surrendered the condominium and

---

county may have mistakenly considered a mobile home on the property that does not belong to the Debtor when re-evaluating the tax value.

[2]The Trustee also objects to the Debtor's claim of exemption in $4,282.08 held in a checking account with RBC Bank pursuant to N.C. Gen. Stat. § 1-362. However, the parties informed the Court that this objection was resolved and a consent order as to this objection would be forthcoming.

was residing at the Craven County residence on October 5, 2010. The Debtor is sixty-five years of age and her only monthly income consists of a social security payment in the amount of $855.00 and her deceased husband's Veterans Administration pension payment in the amount of $335.00.

A total of four mobile homes are located on the 6.851 acre tract. The Debtor owns a double-wide mobile home located on the property. The Debtor's son, granddaughter and former daughter-in-law each own separate mobile homes all of which are located on the 6.851 acre tract. A driveway providing access to the highway runs through and connects each of the three tracts. The four mobile homes maintain separate utility services and separate septic tanks.

The 1.451 acre tract contains two mobile homes and a storage shed. The Debtor resides in a double-wide mobile home located on the 1.451 acre tract. She and her husband acquired the 1.451 acre tract to serve as their residence. Prior to acquiring the 1.451 acre tract, the Debtor's in-laws used the land as their residence. The second mobile home located on the 1.451 acre tract is occupied by her deceased son's three children, her former daughter-in-law and her former daughter-in-law's new husband.[3] Her former daughter-in-law's husband owns the mobile home and the Debtor collects monthly rental payments in the amount of $100.00 for their use of the land. She testified that prior to filing bankruptcy, she did not charge them rent for using the land. The Debtor owns a shed located on the 1.451 acre tract which she allows her former daughter-in-law's family to use.

The Debtor explained that although the 4.470 and .930 acre tracts were acquired at later dates, the tracts are contiguous and were purchased for the purpose of serving the Debtor's residence. The 4.470 acre tract contains two mobile homes, a vegetable garden and a fruit tree

---

[3] The Debtor explained that prior to her son passing away, he and his wife along with their three children occupied the mobile home. His wife has since remarried and continues to occupy the mobile home with her three children and her new husband.

orchard. The Debtor's forty-nine year old disabled son[4] resides in a 1975 double-wide mobile home situated on the 4.470 acre tract. Her son owns the mobile home. However, she owns the land on which it is situated. She explained that she and her husband never charged their son rent to use the land because he was family. In addition she explained that if her son had to make rental payments, he would not be able to afford to live in the mobile home, as he is disabled and his only source of income is social security. She testified that occasionally she stays with her son in his mobile home when he becomes ill.

There is also a 1982 single-wide Chapman mobile home located on the 4.470 acre tract. The mobile home was previously occupied by her son and his daughter. However, her son was killed in a motor vehicle accident and now her granddaughter and great-granddaughter occupy the mobile home. The Debtor does not charge her granddaughter rent to use the land.

Each year the Debtor's son plants a vegetable garden on the 4.470 acre tract. The Debtor explained that she purchases the seeds for the garden and her son sows the seeds and maintains the garden. The garden produces enough vegetables each year to feed her and her family. The Debtor cans and freezes the produce from the garden and gives any surplus to neighbors.

In addition to the vegetable garden, a fruit tree orchard is located on the 4.470 acre tract. The Debtor testified that she also consumes and preserves the fruits produced by the fruit orchard.

Grapevines and a storage shed are located on the .930 acre tract. The grapevines yield concord grapes and have been on the property for approximately twenty years. She testified that she

---

[4] The Debtor explained that her son is disabled due to brain injuries. She testified his disability prevents him from participating in strenuous activities but that he is able to perform light activities around the mobile home and the land.

picks the grapes and uses them for making jellies and jams. In addition to the grapevines, she also uses the .930 acre tract for storage. At one point, the storage shed was used as a tobacco barn.

In support of his contention that the Debtor should not be permitted to claim an exemption under N.C. Gen. Stat. § 1C-1601(a)(1) as to the 4.470 acre and .930 acre tracts, the Trustee cites to this Court's rulings in *In re Lanier*, 2008 WL 1806117 (E.D.N.C. April 18, 2008) (Doub, C.J.), *aff'd sub nom. Lanier v. Beaman*, 394 B.R. 382 (E.D.N.C. 2008) and in *In re Kincade*, Case No. 10-02462-8-RDD (Bankr. E.D.N.C. Sept. 20, 2010) (Doub, C.J.).

The Court in *Lanier* addressed the issue of whether an adjacent pasture of 9.026 acres could be claimed as exempt residential property of the debtors, when the 9.026 acres were used to keep rescued horses, but which use was not linked to the support, existence, or enhancement of the structure in which the debtors lived. *In re Lanier*, 2008 WL 1806117 at *3. The Court found that the 9.026 acres of pasture could not reasonably be construed to be used as a residence, when the pasture was used for abandoned horses, which were only visited from time to time by children who were not dependents of the debtor. *Id.* at *2. The Court noted "[t]here is no structure, storage shed, well, driveway, parking area, playground, septic system, or easement on the 9.026 acre tract that serves . . . the debtors' residence." *Id.* Additionally, the Court noted that the pasture could not be considered as incidental property as defined in 11 U.S.C. § 101(27B), because the property upon which the debtor's principal residence was located was conveyed separately from the 9.026 acres. *Id.*

Similarly, the Court in *Kincade* addressed the issue of whether a hog barn located on 8.5 acres which had a separate utility bill, was used for support, existence, and enhancement of the debtor's residence which was located on an adjacent 1.5 acre tract, when the barn served as a storage facility for the debtor's tractor, tools and firewood. *In re Kincade*, Case No. 10-02462-8-RDD at

5

4 (Bankr. E.D.N.C. Sept. 20, 2010) (Doub, C.J.). The Court found that by "storing tools, a tractor, firewood, and using the converted lagoon as a pond for recreational fishing, the debtor clearly 'uses' the hog barn and the 8.5 acres as a residence pursuant to N.C. Gen. Stat. § 1C-1601(a)(1)." *Id.* at 4-5. Additionally, the Court noted that in rural Hyde County, acreage is commonly conveyed as a homestead or residence and the 8.5 acres was identifiable as "incidental property." *Id.* at 4.

The Court finds that the circumstances and facts in *Kincade* are more similar to the circumstances and facts in this case than *Lanier*.

The Court must look to North Carolina law when determining a debtor's claimed exemptions. *In re Cook*, Case No. 02-11321 at 2 (Bankr. W.D.N.C. March 4, 2003) (Hodges, J.). N.C. Gen. Stat. § 1C-1601(a)(1) provides "[e]ach individual, resident of this State, who is a debtor is entitled to retain free of the enforcement of the claims of creditors: (1) the debtor's aggregate interest, not to exceed thirty-five thousand dollars ($35,000) in value, in real property or personal property that the debtor or a dependent of the debtor . . . uses as a residence." This language suggests the purpose of the residential exemption statute is "to secure debtors and their families the shelter of a homestead." *In re Cook*, Case No. 02-11321 at 4 (Bankr. W.D.N.C. March 4, 2003) (Hodges, J.).

The language of N.C. Gen. Stat. § 1C-1601(a)(1) includes the language "uses as a residence" as an element of the exemption. Merriam-Webster Dictionary defines "residence" as "the act or fact of dwelling in a place for some time," and as "a building used as a home." www.merriam-webster.com.

11 U.S.C. § 101(13A) provides:

> The term "debtor's principal residence": -
> (A) means a residential structure, including incidental property, without regard to whether that structure is attached to real property; and

> (B) includes an individual condominium or cooperative unit, a mobile or manufactured home, or trailer.

11 U.S.C. § 101 (27B) states:

> The term "incidental property" means, with respect to a debtor's principal residence -
> (A) property commonly conveyed with a principal residence in the area where the real property is located;
> (B) all easements, rights, appurtenances, fixtures, rents, royalties, mineral rights, oil or gas rights or profits, water rights, escrow funds, or insurance proceeds; and
> (C) all replacements or additions.

Exemptions are to be liberally construed in favor of the debtor. *In re Mims*, 49 B.R. 283 (Bankr. E.D.N.C. 1985). Unlike the adjacent pasture in *Lanier*, which was not linked to the support, existence, or enhancement of the residential property, here all three parcels are used to serve the Debtor's residence. In *Lanier* the property was used only as pastureland. Here the Debtor testified that the three parcels were acquired to serve as a residence for the Debtor's family. The contiguous lots contain a vegetable garden, fruit trees, grapevines, two storage sheds, and a driveway all of which are used by the Debtor, and necessary for the support and maintenance of the Debtor's home. The vegetable garden located on the 4.470 acre tract provides meals for the Debtor. The Debtor testified there is a driveway that runs through and connects all three parcels providing access to the gardens and grapevines. Therefore, the Court finds the entire 6.851 acre tract is used as Debtor's residence and the 4.470 acre and .930 acre parcels, which together with the 1.451 acre parcel comprise the 6.851 acre tract, are used for the support, existence and enhancement of the Debtor's residence.

Relying on *Lanier* and *Kincade*, the Trustee also argues that because the property upon which the Debtor's principal residence is located was conveyed separately from the other two tracts, the tracts are not considered "incidental property." While the Court agrees that the time span

between the conveyance of the residential property and the adjacent acreage is a factor to consider when determining whether the adjacent property is used for the support, existence, and enhancement of the residential tract, this factor is not dispositive. Although the tracts were acquired at different times, they were all acquired to serve the principal residence. All three parcels are linked to the support, existence, or enhancement of the residential property, especially in the rural setting in which the property was acquired. In rural Craven County, such acreage is commonly considered as the homestead or residence.

Since the Debtor's claim of the residential exemption uses the full allowed amount of $60,000.00, the Trustee's objection to the Debtor's claim of a full wildcard exemption pursuant to N.C. Gen. Stat. § 1C-1601(a)(2) is **SUSTAINED.**

The Trustee has failed to carry his burden of proof on the objection to the residential exemption as claimed by the Debtor. Therefore, the Debtor's residential exemption is **ALLOWED**. Accordingly, the Trustee's objection to the Debtor's claim of exemptions is **OVERRULED** in part and **SUSTAINED** in part.

**SO ORDERED**.

**END OF DOCUMENT**